## ELLIS *v.* DASHER.

Prior possession of land under a claim of ownership is prima facie evidence of title in the occupant, upon which he may recover in ejectment, unless the defendant shows a better adverse title, by possession or otherwise. Such claim of ownership, if bona fide, may be supported by proof of a parol gift from another and entry thereunder, even where such entry was not made until after the donor's death, and although it does not affirmatively appear that the donor had ever been in possession of, or had title to, the property. Such a gift would not pass title to the donee, but it could nevertheless be made the basis of an honest possession by the latter, accompanied by a bona fide claim of right, which could in time ripen into a perfect title.

Argued February 27, — Decided March 22, 1897.

Ejectment. Before Judge Felton. Bibb superior court. April term, 1896.

*Ryals & Stone*, for plaintiff.
*Hardeman, Davis & Turner* and *Arthur Dasher*, for defendant.

FISH, J. This was an action of ejectment for the recovery of a certain lot of land in Bibb county, and by amendment to the original petition a demise was laid in Thomas B. Ellis. The suit was filed March 28th, 1893. The defendant pleaded the general issue. At the trial, the plaintiff's attorneys stated to the court that they relied for a recovery upon the prior possession of Thomas B. Ellis, who was the real plaintiff in the case. At the close of the plaintiff's evidence, the defendant's counsel moved for a nonsuit, which was granted by the court; to which ruling the plaintiff excepted, and he now assigns the same as error. J. E. Ellis was the only witness introduced in the case. From that portion of his testimony which is material to the decision of the case, it appears that he is the father of the plaintiff, who was twenty-six years old in February preceding the trial of the case; that Thomas Bagby, the plaintiff's grandfather, made a parol gift of the land to the plaintiff in 1876, and told the witness to go and take possession of it; that the lot was then vacant, and remained vacant until January, 1885, when the witness began building a storehouse on it, which he completed in February of that year; that at the time that he built a house on the lot he also put a fence around it; that on

February the 9th, 1885, he rented it to John Walker and was paid one month's rental for the same by Lizzie Walker, the wife of John. The witness also testified that John and Lizzie Walker were not in possession of the premises before; that, prior to his renting the place to John Walker, Lizzie and John had tried several times to rent the place from him, and John had tried to buy it, but he told him that it belonged to his, the witness's, son and could not be sold until he became of age; that in April, 1885, when the witness went to collect the rent, Lizzie Walker claimed that the sheriff of Bibb county had made her a deed to the premises, and produced a deed from the sheriff, which by its terms included the land in dispute, but she admitted that the sheriff had made a mistake in conveying to her the land in question, but she thereafter refused to pay rent for the same or to surrender possession thereof; that the witness carried Mr. Westcott, the sheriff, out to see her, and Westcott said to her that he had made a mistake in making the deed and that he would take the deed and rectify it, but she refused to let the sheriff correct the mistake in the deed, and said to him, "You have deeded me Mr. Ellis's lot and I expect to hold you to it; you made the mistake and you must pay for it." It also appeared, from the evidence, that Thomas Bagby, the grandfather of the plaintiff, died in 1884. While the witness testified that he went and took possession of the lot when Thomas Bagby gave it to the plaintiff, all he really did during the lifetime of Bagby, who died in 1884, was to go out, walk over the lot, and get certain boundaries.

The plaintiff neither showed title in himself, nor in his alleged donor, nor any possession in the latter. He claimed to have had prior possession of the premises in dispute, and relied for a recovery solely on that. "A plaintiff in ejectment may recover the premises in dispute upon his prior possession alone, against one who subsequently acquires possession of the land by mere entry, and without any lawful right whatever." Civil Code, § 5008. As Chief Justice Bleckley says, in *Bagley* v. *Kennedy*, 85 *Ga.* 706, "This expression of the law is in accordance with the general authorities on the question." See in that case the numerous citations on this point, made by the learned ·

Chief Justice, from text-books and the decisions of the courts of last resort in other States of the Union. See also, *Wolfe* v. *Baxter*, 86 *Ga.* 705; *Bleckley* v. *White*, 98 *Ga.* 597; and *Sparks* v. *Conrad*, 99 *Ga.* 643.

If the plaintiff in this case showed prior possession in himself, under a bona fide claim of ownership, he was entitled to recover, unless the defendant showed a better adverse title, by possession or otherwise. Did the plaintiff make out such a case? The evidence establishes the fact that J. E. Ellis, the father of the plaintiff, took possession of the land sued for and put valuable improvements thereon prior to the possession of the defendant, or of the possession claimed for Lizzie Walker, under whom the defendant apparently holds. It further appears from the evidence, that the elder Ellis, when he took possession of, and made these improvements on, the premises in dispute, did not do so for himself, but was acting for and in behalf of his son, the plaintiff. At the time that the grandfather of the plaintiff made a parol gift of the land to him, the plaintiff being an infant of tender years and incapable, both in law and in fact, of acting for himself, his father had a right to accept the gift for him. Civil Code, § 3565. For the parent to accept, for his infant child, a parol gift of land, without taking possession of the land for the child, would be useless. Possession is the first step that a donee, under a parol gift of real estate, can take toward perfecting title in himself. This step, followed by valuable improvements placed upon the land upon the faith of the gift, will place him in a position where he can legally demand of the donor, and, if need be, enforce a specific performance of the parol promise. Civil Code, § 4039; *Mims* v. *Lockett*, 33 *Ga.* 9; *Porter* v. *Allen*, 54 *Ga.* 623; *Hughes* v. *Hughes*, 72 *Ga.* 173; *Floyd* v. *Floyd*, 97 *Ga.* 124; *Ogden* v. *Dodge County*, Ib. 461. Possession alone will lay the foundation for a prescription; possession and valuable improvements upon the faith of the parol gift, will give the right to demand a transfer of the donor's title. We think, therefore, that the father of the plaintiff, during the life of the donor, had the right, upon the faith of the parol gift, to take possession of the land for his infant son; especially if he intended to put valua-

ble improvements upon it for his child. Although the father took possession of the property for his child while the latter was still of very tender years, he did not do so until after the death of the donor, though it is apparent from the testimony that he thought he had taken possession prior to that time, and that all that he did in reference to the land he intended to be in behalf of the plaintiff. The fact that the possession was taken and the improvements made after the death of the donor does not prevent the possession from being a bona fide one. It is not legal but moral fraud, a consciousness of doing wrong, which, in the origin of the possession of land, prevents a prescription from running in favor of the possessor. *Wingfield* v. *Virgin*, 51 *Ga.* 139; *Virgin* v. *Wingfield*, 54 *Ga.* 451; *Salter* v. *Salter*, 80 *Ga.* 178 ; *Ware* v. *Barlow*, 81 *Ga.* 1; *Lee* v. *Ogden*, 83 *Ga.* 325. In *Wright* v. *Smith*, 43 *Ga.* 291, McCay, J., in speaking of adverse possession, says : " The question of adverse possession is one of intention, and turns upon the bona fides of the tenant. To charge him with fraud, so as to vitiate his possession, the facts must be such as to affect his conscience." If the plaintiff's father, acting for and in behalf of the plaintiff, who was then both in law and in fact incapable of acting for himself, took possession of the land in controversy, really and honestly believing that his infant child had a right to this property under the parol gift of the latter's grandfather, and held possession of the same under this belief, then such possession was in good faith, as it did not originate in moral fraud. Proof of prior possession in the plaintiff, under a bona fide claim of right, was sufficient to have put the defendant upon proof of her title, unless the evidence of the plaintiff disclosed such a title in the defendant as was sufficient to defeat a recovery by him. The defendant in error contends that the plaintiff's evidence showed a prescriptive title in her, arising from seven years adverse possession under color of title. If this is true, then of course the plaintiff can not recover. We do not think that the evidence of the plaintiff sustains this contention. In the first place, no prescription could run against the plaintiff during his minority, and suit was brought within much less than seven years after he attained his ma-

jority. Further, it is apparent from the testimony, that at the time the suit was brought, the defendant had not *herself* been in possession of the premises in dispute long enough to have acquired any sort of a prescriptive title ; and in order to make out seven years adverse possession under color of title, she is compelled to tack her possession to that of Lizzie Walker from whom she purchased the land. Lizzie Walker's possession could not be the foundation of a prescription, because *she knew* that she could not assert any bona fide claim to the land in controversy. While it is fairly inferable from the evidence that the deed which the sheriff made to her, by its descriptive terms, included this land, she knew and admitted that she knew that this was simply a mistake on the part of the sheriff in drafting the deed ; and therefore she was obliged to know that the land did not belong to her. Under the evidence, it was a moral fraud on her part to try to take advantage of the mistake in the sheriff's deed. No prescription runs in favor of one who took possession of land knowing that it did not belong to him. *Cowart* v. *Young*, 74 *Ga.* 694 ; *Wade* v. *Johnson*, 94 *Ga.* 350, 351. In making out a prescriptive title, an innocent purchaser can not tack to his own possession that of a grantor whose possession originated in fraud of the true owner. Civil Code, § 3596 ; *Farrow* v. *Bullock*, 63 *Ga.* 360 ; *Wade* v. *Johnson*, supra. The evidence, in our opinion, being sufficient to have authorized, if not to have required, a jury to find a verdict in the plaintiff's favor, it was error to grant a nonsuit.

*Judgment reversed. All the Justices concurring.*